**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:17cr120

VINCE EDWARD NICHOLAS


**MEMORANDUM OPINION**

This matter is before the Court on the defendant's MOTION TO REDUCE SENTENCE PURSUANT TO § 603(b) OF THE FIRST STEP ACT (ECF No. 67); the United States' Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 68); and the Defendant's Reply to Government's Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 70); and the Defendant's Supplemental Exhibits to his Reply to Government's Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 71). Having considered those documents and the Worksheet in Response to Motion for Compassionate Release (ECF No. 69); and, for reasons set forth below, the defendant's MOTION TO REDUCE SENTENCE PURSUANT TO § 603(b) OF THE FIRST STEP ACT (ECF No. 67) will be held in abeyance pending further briefing.

## BACKGROUND

On September 6, 2017, Vince Edward Nicholas ("Nicholas") was named in a two count Indictment charging him with Hobbs Act Robbery in violation of 18 U.S.C. § 951 (Count One) and use of a firearm by brandishing during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Two). Nicholas was also named as the defendant in a two count Criminal Information. In each count Nicholas was charged with possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). Nicholas pled guilty to both counts of possessing of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c), as alleged in the Criminal Information.

At the time of sentencing, the statutory penalty for Count One was five years to life and the statutory sentence for Count Two was 25 years to life to be served consecutively. The guidelines at the time of sentencing were 60 months on Count One and 300 months on Count Two to be served consecutively. Today, the guidelines would be 60 months on Count One and 60 months on Count Two to be served consecutively. U.S.S.G. § 2K.4(b). Nicholas was sentenced to a total term of 360 months, consisting of 60 months on Count One and 300 months on Count Two, to run

2

consecutively.   In the vernacular, Nicholas' sentence was a "stacked sentence" of 360 months for the two § 924(c) convictions.

In 2019, Congress passed § 403 of the First Step Act and ended the practice of stacking the convictions for violating 924(c) in the way that Nicholas was sentenced.   Thus, if Nicholas were sentenced on the same charges today, he would face a mandatory sentence of 120 months (60 months on Count One and a mandatory consecutive sentence of 60 months on Count Two).

The Statement of Facts in this case discloses what was, indeed, a serious run of criminal conduct which included the offenses of conviction.  And, as the United States argues, Nicholas secured a substantial benefit by not standing trial on the full panoply of criminal conduct in which he engaged and for which he was charged by way of indictment (to which he did not plead) and the information (to which he did plead).

A brief summary is in order.  The summary from the presentence report (ECF No. 62, pp. 4-8) will do.

On November 28, 2016, Nicholas, using and brandishing a firearm, robbed the Kwik Mart in Petersburg, Virginia.  On December 11, 2016, Nicholas, again armed and brandishing a firearm, robbed a 7-Eleven convenience store in Hopewell, Virginia.  On December 13, 2016, Nicholas was identified and a search warrant was executed at his home on December 14, 2016 at which time Nicholas admitted

3

to having committed the robberies on November 28 and December 11. He also admitted to committing robberies of gas stations or convenience stores on October 26, 2016, November 19, 2016, November 20, 2016, and November 21, 2016. He explained to law enforcement officers that he committed the robberies because he was homeless and needed to feed his daughter and could not obtain employment because of previous felony convictions.

Nicholas also has gang affiliations. Indeed, when he was confined, Nicholas identified himself as an East Coast Crip and a member of GD Folk Nation (a set of the Gangster Disciples Street Gang).

Nicholas' juvenile criminal history began when he was 12 and continued through age 14. The charges were serious ones including grand larceny of a vehicle and malicious wounding, destruction of property, and grand larceny of vehicle parts. In each instance, Nicholas was placed in juvenile detention.

His adult criminal history commenced at age 18 when he was convicted of contributing to the delinquency of a minor for having carnal knowledge of a 14 year old girl. At age 18, he also was convicted of unauthorized use of a motor vehicle and possessing a controlled substance. At age 19, he was convicted of possession of a controlled substance and eluding and disregarding the police. He was sentenced to five years imprisonment with five years

suspended on condition of good behavior.  He did not abide by the good behavior and committed several traffic crimes. Then, when he was 19, Nicholas again committed grand larceny for which he received a 20 year sentence with 17 years suspended.  Also, at age 19, Nicholas was convicted of not reporting an accident, eluding the police, unauthorized use of a vehicle, and possessing a controlled substance for which he received a sentence of five years with five years suspended.  At age 23, Nicholas was convicted of indecent exposure.  His record includes failing to appear and miscellaneous traffic offenses.  In sum, Nicholas has been involved in criminal activity for most of his life, has received lenient punishment, and has benefited not one bit therefrom.

Nicholas seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on his post-conviction rehabilitation, his age (24) at the time of the offenses of conviction, and the sentencing changes precipitated by the First Step Act as those changes pertained to convictions under 18 U.S.C. § 924(c).

To begin, the United States contends that Nicholas has not exhausted his remedies under the statute.  However, the record, considered as a whole, shows that he has satisfied the exhaustion requirement and the Court has jurisdiction over this matter.

In addition to the facts and circumstances of the offense set forth in the Statement of Facts[1] and summarized above, the record shows that, as Nicholas says, he had a very difficult life from an early age having been physically abused, exposed to violence, shootings, drugs, and prostitution. Nicholas' mother was murdered. It is about then that his lengthy criminal history began.

Nicholas began smoking marijuana at a young age. He has long used pain pills and abused Xanax, a habit that he continued until the offense conduct in this case.

While in prison, Nicholas has engaged in a goodly number of rehabilitative steps. And, even the United States acknowledges that work to have been productive.

DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A)(i) provides, in pertinent part that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate

---

[1] See PSR, ECF No. 62, pp. 4-8.

release under § 3582(c)(1)(A)(i).  United States v. White, 378 F.
Supp.3d 784, 785 (W.D. Miss. 2019).

Nicholas bases his motion for relief principally on the
decision in United States v. McCoy, 981 F.3d 271, 284 (4th Cir.
2020).  As McCoy explains, formerly, only the Director of the
Bureau of Prisons ("BOP") was authorized to move for compassionate
relief on a defendant's behalf.  United States v. McCoy, 981 F.3d
at 274.  Then, in 2018, Congress expanded access to compassionate
release by removing the BOP from its gatekeeping role and allowing
federal prisoners to move the Court for compassionate relief on
their own.  Accordingly, a federal prisoner may directly file a
motion for compassionate release after requesting relief from the
Warden of his facility of confinement and waiting thirty (30) days
from the request to the Warden or having exhausted the BOP
administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Once the
procedural requirements are met, a reduction of sentence may be
granted if the applicant establishes (1) that reduction is
warranted by 'extraordinary and compelling reasons;' (2) if policy
statements of the Sentencing Commission are in harmony with the
request; and (3) if the request if compatible with any applicable
§ 3553(a) factors.  United States v. Jenkins, 22 F.4th 162, 169
(4th Cir. 2021) (quoting United States v. Kibble, 992 F.3d 326,
330 (4th Cir. 2021).

The statute does not define the term "extraordinary and compelling reasons."  Therefore, our Court of Appeals has held that that district courts must conduct a "multifaceted" analysis and consider the "totality of the relevant circumstances." United States v. Hargrove, 30 F.4th 189, 197-98 (4th Cir. 2022). And, as explained in McCoy, consideration may be given to the defendant's age at the time of the offense, the defendant's prior criminal history, and his behavior and rehabilitation while incarcerated, the amount of time served, any sentencing disparity, and changes in the law.  In Jenkins, the Fourth Circuit held that, to be considered, any extraordinary and compelling reasons must be consistent with any applicable Sentencing Commission policy statements.

On November 1, 2023, the Sentencing Commission updated the sentencing guidelines to address sentencing changes that resulted from the First Step Act of 2018 ("FSA"), Pub. L. No. 115-391, § 603(b) (2018).  The updated changes expressly outline the Sentencing Commission's views on extraordinary and compelling reasons.  The new guidelines retained the three categories from the previous sentencing guidelines that were to be considered for compassionate release: (i) the defendant's medical condition; (ii) the defendant's health and age; and (iii) his family circumstances. The new guidelines supplemented those three categories by adding

8

a number of new categories under the medical circumstances factor; they modified the family circumstances factor; and added factors for victims of abuse and unusually long sentence; and revised the "other reasons" category.  U.S.S.G. § 1B1.13.  Of course, the compassionate relief analysis necessitates that any reduction of sentence must be compatible with, and warranted by, the § 3553(a) sentencing factors.  United States v. Jenkins, 22 F.4th at 169.

The recent decision in Concepion v. United States, 142 S. Ct. 2389 (2022), although decided under section 404 of the FSA, rather than section 603 (the compassionate release section) teaches that, in modification of sentences that are permitted by law, district courts have discretion to consider changes in facts and in law. In other words, in section 404 cases, Concepion authorizes consideration of rehabilitation evidence as well as changes in the law.  There is no reason why that concept should not be applied in section 603 cases.  Indeed, McCoy teaches as much.

The United States acknowledges that the stacking provision that produced Nicholas' sentence has been eliminated and that, under the decision in McCoy, that change in the law can be considered as a basis for compassionate release.  However, the United States opposes the grant of the motion here because it considers the facts here to be considerably different than those presented in McCoy.  The United States also argues that, in light

of the offense conduct in this case, and Nicholas' criminal history, the stacked § 924(c) sentences are not extraordinary. That, according to the United States, is largely because of the significant number of robberies committed by Nicholas, the use of a firearm during those robberies, and the number of victims, all of which, says the United States, serve to differentiate this case from McCoy.

And, it is indeed correct that Nicholas' case is considerably different than the fact pattern in McCoy. The defendants in McCoy had relatively minor criminal histories. Nicholas' criminal history is anything but minor. And the offenses of conviction in McCoy were less serious than in Nicholas' case. Nonetheless, neither Nicholas' criminal history nor the facts of the offense change the fact that Congress has eliminated the stacking aspect of § 924(c) convictions under circumstances such as those presented in this case.

The United States recognizes as much because its principal argument is that the seriousness of the offenses here weigh heavily against granting compassionate release particularly when considered in perspective of the fact that, for most of his life, Nicholas has disregarded the law and put the public at risk by virtue of his criminal conduct. Also, the United States acknowledges that, although Nicholas' efforts toward

rehabilitation have been significant, his conduct in prison has included "more than a half-dozen infractions" since he was incarcerated in 2018, including "multiple instances of assault, threatening harm, possession of a dangerous weapon, and insolence to prison staff." (ECF No. 68, p. 18). Says the United States:

> This demonstrates that Defendant has continued to exhibit the defiant behavior which allowed him to amass the extensive, category VI criminal history from the time of his sentencing and which allowed him to graduate the violent criminal behavior he displayed in his six-robbery spree in 2016.

For that reason, his rehabilitative efforts cannot outweigh the overall offense conduct in the case and the need to protect the public and to deter the defendant from future crimes.

That position is not without force, but the points made by the United States provide no basis for ignoring the effect of § 603 and the teachings of McCoy and Concepcion. Rather, those arguments relate to the traditional § 3553(a) analysis, the task to which we now turn.

The seriousness of the offense of conviction and of the offense conduct it is beyond question. Likewise, the troubled life of Nicholas is beyond question. The offense conduct and the offenses of conviction augur in favor of a sentence that adequately protects the public and deters Nicholas. That is especially so considering his repetitive criminal activity from a young age and

the fact that previous sentences of leniency have not served to deter his criminal conduct.  And, that is further illustrated by the rather serious infractions while in prison.

That brings the analysis to whether the sentence is a just and fair one as it exists today.  That, in turn, necessitates a recognition that the statutory penalties for the offenses of conviction have changed significantly.  For Count One, the punishment was five years to life and for Count Two, the punishment was 25 years to life to be served consecutively.  Today the punishment is five years to life for Count One (in other words there is no change).  However, the punishment for Count Two has changed significantly from 25 years to life to 5 years to life, consecutively.  That is because the decision of Congress manifest in § 403 of the FSA.  In other words, Congress has said that consecutive offenses of the type of which Nicholas was convicted warrant a serious reduction in punishment.  That is to say that there is a considerable disparity between the statutory sentences of today and those which were imposed on Nicholas.  The disparity of sentences and the intent of Congress are factors the courts must take into account in assessing motions for compassionate release.

Additionally, it is appropriate to take into account the circumstances of the offense that overlap with the conditions

pertinent to the defendant. It appears undisputed that the robberies (which were committed in a short period of time) were committed because Nicholas was homeless and needed to provide his daughter and was unable to obtain employment because of prior felony offenses (PSR, ECF No. 62, ¶ 9). That factor cuts in favor of a reduction of the imposed sentence.

To all that, the United States responds that "there are a number of benefits Defendant received by the aforementioned charges and his subsequent guilty plea to those charges." The most apparent benefit is in the charging decision. And, it is true that had Nicholas been charged with six robberies, Nicholas would have faced a minimum life sentence before the FSA and a sentence (mandatory) of 42 years on the § 924(c) charges alone.

However, the United States made the charging decision and what it decided to charge him with were the offenses to which he pled guilty, of which he was convicted, and for which he was sentenced. And the Court has been told that Congress no longer shares the view that the punishment imposed for the offenses of conviction is an appropriate one.

CONCLUSION

Taken as a whole, the record necessitates the conclusion that a sentence reduction is warranted. However, the issue is what

13

reduction will both recognize the Congressional judgment that a stacked sentence in the amount imposed is not appropriate and satisfy the § 3553(a) factors of protecting the public, deterring Nicholas, promoting respect for the law and be a fair and just sentence.

Nicholas contends that the statutory minimum sentence (5 years for each count of conviction) meets those requirements. The United States takes the view that the extant thirty-year (360 month) sentence is essential to satisfy those requirements.

However, neither view adequately considers what the record presents. In particular, a ten year sentence, the statutory minimum, may well not adequately account for Nicholas' extensive criminal history and his continued bad behavior while incarcerated. And such a sentence may well not adequately reflect the extremely serious offense conduct. On the other hand, leaving the sentence as is does not recognize the view of Congress that the stacking of § 924(c) sentences should not result in a thirty-year (360 month) sentence.

The new guideline calculations would be 120 months (60 months on each count consecutive). So a sentence above the minimum would also be a variance or a departure.

The briefs filed by the parties do not address whether, if sentencing were today, a variance or departure would be

14

appropriate.  Considering the state of the record, it is best to have the parties brief those issues.  Because the United States seeks a sentence above the guidelines, it will open the briefing by addressing why, and under what mode (departure or variance), a sentence above the guidelines is appropriate.

It is so ORDERED.

_____/s/_____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  April ____, 2024

15